JOHN WARD, #37457                                        PETITIONER

VS.                                          CIVIL ACTION NO.1:05CV213-GHD-JAD

LAWRENCE KELLY, ET AL.                                   RESPONDENTS

## REPORT AND RECOMMENDATION

John Ward was convicted of felony DUI in the Circuit Court of Oktibbeha County, Mississippi. His indictment was amended to allege he was an habitual offender under § 99-19-81 Miss. Code Ann. He was found to be an habitual offender and sentenced to five years in the custody of the Mississippi Department of Corrections, without possibility of parole.

## SUMMARY OF TRIAL EVIDENCE

At trial Officer Shawn Word of the Starkville Police Department testified that he and Deputy Sallis of the Oktibbeha County Sheriff's Office participated in a road block on Highway 82 near Highway 12 in Starkville, Mississippi. These two officers were standing before the checkpoint as vehicles approached so that they could check the car tags. Word saw a Jeep stop abruptly in the road, significantly short of the road block, though there was room to pull up to the officers. The area where the vehicle stopped was fairly well lit and Word was also using a flashlight. He witnessed the driver exiting the vehicle and running around to the rear of the car. The passenger in the back of the car, exited the car, and reentered at the driver's position. Officer Word ran toward the vehicle as this swap was being accomplished. He yelled at Sallis to alert him to the fact that the drivers were being switched. He aimed his light at the individuals swapping places and was able to identify the apparel worn by the defendant. By the time the swap had been completed, the officer was at the hood of the car. James Ward, the petitioner's brother, then behind the wheel was immediately directed to pull over to the shoulder of the road.

John Ward was found in the back seat of the car on the passenger side. The officer got John Ward out of the car. The officer detected a strong smell of alcohol while talking to Ward. When the officer asked John Ward why they had switched drivers, he said, "Come on Word, you know me.

Uh, getting--I'm getting my license back next month. I don't need to get another suspended driver's license ticket."

About the time Word got the petitioner's brother to pull over, the driver of a Chevy pickup truck that had stopped immediately behind the Ward brothers, called out to Officer Word that "The guy in the purple hat(James Ward) just changed, uh--changed with the guy in the back passenger seat." Word responded to this unidentified motorist thanking him and telling him that the officer knew they had swapped places.

Field sobriety, portable intoxilyzer and the regular intoxilyzer tests all confirmed that John Ward was intoxicated. Word testified that there was a black female in the front passenger seat.

Officer Sallis did not witness the switch, but confirmed that Officer Word yelled out that the drivers were going to switch and ran up to the Jeep. He also testified that there was a black female in the front passenger seat. Like Word, he failed to get her name.

The defense called Mary Cook, Lewis Taylor, James Ward and the petitioner. Mary Cook testified that the Jeep belonged to her. She agreed to loan it to the petitioner with the understanding that his brother, James, would be the driver. James drove the vehicle away from her home. Lewis Taylor, a cousin, testified that he, not a black female had been riding in the front passenger's seat when the car was pulled over. He testified that James, not John was driving as they approached the road block.

John Ward testified that he was a passenger in the Jeep and was not driving the Jeep. He testified that his brother James was driving and that Lewis Taylor was also in the Jeep. He denied that he had a drinking problem. On cross examination he had to admit that his two prior DUI's had occurred on consecutive months and on the night of this stop he had consumed whiskey and several beers.

James Ward testified on direct and redirect that he was driving the vehicle coming up to the roadblock. He also admitted on cross-examination that he told one of the officers, when asked why drivers were switched, that he, "tried to drive, but John would not let me."

Deputy Sallis testified on rebuttal that there had been two males, the Ward brothers and a black female in the Jeep during the incident. The jury convicted Ward, and after the amendment to the indictment, the trial judge sentenced him to five years without the possibility of parole.

In his petition for writ of habeas corpus, Ward initially stated five claims, one of which he has elected to abandon. The grounds raised and still being pursued are:

1. The trial judge committed error in denying the motion *in limine* to prohibit Officer Word from repeating what the unknown motorist had said to him about the drivers switching.

2. The admission of the hearsay statement of the unknown motorist witness through the testimony of Officer Word.

3. Ineffective assistance of trial and appellate counsel:

    a) Trial counsel's failure to adequately argue the motion *in limine*.

    b) Trial counsel's failure to call Betty Ward and Elaine Jefferson as witnesses.

    c) Trial counsel's failure to 'adequately apprise' the jury of contradictions in the testimony of Officer Word.

    d) Failure of appellate counsel to assert violation of the Confrontation Clause.

4. The verdict is against the overwhelming weight of the evidence. (This is the original 5th ground).

## STANDARD OF REVIEW

In considering these challenges the undersigned has considered the limited scope of the federal court's review, given that these claims have already been rejected by the Mississippi Supreme Court on the application for leave to file habeas corpus. 28 U.S.C. § 2254(d) provides:

> (D) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Since any factual findings of the state appellate courts are presumed correct, the burden is upon the petitioner to prove by clear and convincing evidence any factual errors. 28 U.S.C. §2254(e)(1).

### Hearsay Testimony and the Right to Confrontation

Ward's first two claims and two of his four claims regarding ineffective assistance of counsel all revolve around the trial court's decision to allow Officer Word to testify about what the passing motorist reported to him; namely that Ward and his brother had switched places. Word, of course, testified in some detail about having witnessed the switch.

Ward challenges the admission of the evidence as improper under the Mississippi Rules of Evidence. Treated as a mere state evidentiary matter, this claim presents no constitutional issue on its face. *Gilmore v. Taylor*, 508 U.S. 333, 113 S. Ct. 2112, 124 L.Ed.2d 306 (1993) (O'Connor, J. concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). *Id* at 348-9, 113 S. Ct at 2121. Habeas corpus jurisdiction is invoked with such a claim solely on due process grounds, if at all. "[E]rrors of state law, including evidentiary errors, are not cognizable in habeas corpus as such." *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1992)(citing *Estelle v McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L.Ed.2d 166 (1991). "Errors of state law rise to constitutional dimension only if they so infused the trial with unfairness as to deny due process of law." *Derden,* 978 F.2d at 1458 (citing *Lisenba v. California*, 314 U.S. 219, 228, 62 S. Ct. 280, 286, 86 L. Ed. 166 (1941). The admission of this testimony was allowable within the discretion of the trial court under Mississippi evidentiary rules and did not render Ward's trial fundamentally unfair.

Ward also challenges the admission of this testimony as a violation of his Sixth Amendment rights under the Confrontation Clause and *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177(2004). If the admission of this unknown person's statement does not violate Ward's Confrontation Rights, then his First and Second Claim and parts one and four of his assistance of counsel claims necessarily fail. The respondents argue that applying the rationale of

4

*Crawford* to this case, Ward's Sixth Amendment right to confront witnesses against him has not been violated.

In *Crawford* case, Crawford's wife did not testify at trial because of the matrimonial privilege. She had taken her husband to another man's home after reporting that this man had tried to rape her. Her husband stabbed the other man and the only issue was whether or not he acted in self-defense. Her statement to police about the incident, which indicated the other man was unarmed, was admitted. Crawford was convicted. Mrs. Crawford's statement to police did not fall within any traditional hearsay exception. The passing motorist's statement in this case fell within two different hearsay exceptions. The Court noted that not all hearsay evidence raised Confrontation problems. "An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted." *Id* at 51, 124 S. Ct. 1364. The court found that the focus of the Confrontation Clause was the prohibition of admission of 'testimonial statements,' such as ex-parte in-court testimony , affidavits, depositions, and statements to police officers. The comment by the passing motorist clearly does not fall within the realm of testimonial statements, and *Crawford* does not prohibit its introduction into evidence.

Even if the admission was error, it clearly appears to be harmless. This reported comment from the unknown motorist came from the only witness for the state who testified to seeing the Ward brothers switch places. According to Word, the petitioner acknowledged the fact of the switch at the scene. Finally Ward's brother's testimony admitted that Ward had been driving. The reporting by one officer of this statement is cumulative and on the record seemingly insignificant. If the jury had been otherwise inclined to disbelieve Officer Word, his report of the existence of another unknown witness, logically would not bolster his testimony. Because the admission of this testimony did not violate his constitutional rights or prejudice him, Ward's First and Second Claims and the first and last parts of his claim for ineffective assistance of counsel are without merit.

## Ineffective Assistance of Counsel

Ward's has two remaining claims of ineffective assistance of counsel. To establish ineffective assistance of counsel, Ward must show, " (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense." *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997); *see Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674 (1984). The deficiency determination is not unguided. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689,104 S. Ct. at 2065. The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decisions in a "highly deferential" manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994); quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. If counsel's performance is deemed to have been deficient, "then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

Ward claims that his attorney was ineffective in failing to call Betty Ward and Elaine Jefferson as witnesses. He has submitted affidavits from the witnesses, both of whom indicate they were at the police station. Betty Ward indicates she had some conversations about the arrest at the police station, including speaking with Officer Word. Neither affidavit provides any information about the substance of any relevant testimony either woman had to offer. Without a showing that either of these women had anything admissible or relevant to say about the case, Ward has also failed to prove either ineffective assistance of counsel or that he suffered any prejudice from the failure to call these witnesses. This claim is without merit.

Ward also claims that his trial attorney failed to "adequately apprise" the jury of contradictions in Officer Word's testimony. One inconsistency Ward contends that is shown in the cross examination is related to whether the individuals were in the process of switching at the time

that Word called out, "They're switching" or whether he called out "They're switching" before any action was taken. On cross examination, it does appear that Word called out to Sallis when the Jeep stopped, but before the doors where opened and the switch began. The other inconsistency was the testimony of both officers that the third occupant of the vehicle was an unidentified black female, when the defense put on testimony that Taylor, a black male was the third occupant.

The first purported inconsistency on a reading of the record appears to be more clarification, than inconsistency, but of little significance. Ward's attorney, in his closing argument focused on the more significant inconsistencies in the testimony. He discussed the fact that Lewis Taylor, a bald man, testified under oath that he had been the third person in the car, not a black female. The attorney questioned the fact that both police officers claimed they never got the woman's name. He pointed out that Word called out about the drivers switching, and that Sallis turned but nevertheless did not witness the switch. There is no deficiency in counsel's argument, much less a deficiency of constitutional magnitude.

Ward claims the verdict is against the overwhelming weight of the evidence. The evidence presented at trial is clearly legally sufficient to support the verdict. That Ward was drunk was not disputed. Word's testimony alone, which the jury chose to credit is enough. That his own brother stated in court that he had told the officers that the petitioner was driving renders this contention completely without merit.

The undersigned recommends that the petition for habeas corpus be dismissed with prejudice.

The parties are referred to 28 U.S.C. 636(b)(1) and Local Rule 72.2(D) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten days of this date. Failure to file written objections to the proposed finding and recommendations contained in this report within ten days from the date of filing will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions accepted by the district court *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Petitioner is directed to acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the court within ten days of this date. Petitioner is warned that failure to comply with the requirements of this paragraph may lead to the dismissal of this lawsuit under F.R.Civ.P. 41(b) for failure to prosecute and for failure to comply with an order of the court.

This the 13th day of December, 2006.

/s/ JERRY A. DAVIS
UNITED STATES MAGISTRATE JUDGE